### In re CALIFORNIA WESTERN RAILROAD, INC., Debtor.

**Michael Meyer, Trustee, Plaintiff,**

**v.**

**Capital Crossing Bank, et al., Defendants.**

**Bankruptcy No. 02–12924. Adversary No. 03–1042.**

United States Bankruptcy Court, N.D. California.

June 13, 2003.

---

Philip M. Arnot, Philip M. Arnot, Inc., Eureka, CA, for Debtor.

Brian J. Purtill, Law Offices of Purtill and Bryan, David N. Chandler, Law Offices of David N. Chandler, Santa Rosa, CA, for Trustee.

### Memorandum on Motion for Summary Judgment

ALAN JAROSLOVSKY, Bankruptcy Judge.

#### Introduction

Debtor California Western Railroad filed a petition under Subchapter IV (Railroad Reorganization) of Chapter 11 of the Bankruptcy Code on December 3, 2002. Plaintiff Michael Meyer is the trustee appointed pursuant to § 1163 of the Code. In this adversary proceeding, he seeks to avoid the security interests of defendants in the assets of the debtor on the grounds that those interested are unperfected and therefore avoidable pursuant to § 544(a) of the Code. His motion for summary judgment against defendant Westamerica Bank is now before the court.

#### Background

California Western Railroad operates on approximately 48 miles of track between Ft. Bragg and Willits, California. It was

originally built as a logging railroad, and has supplemented its income by freight and mail transport in the past. It has operated in recent years primarily as a tourist attraction.

At Willits, California Western owns a depot which is located on the Northwestern Pacific (NWPY) track, on which California Western has trackage rights. California Western connects to the NWPY track, which connects to the Union Pacific Railroad mainline. However, the NWPY line has been closed recently due to maintenance issues, which has resulted in at least a temporary stop to freight traffic. Though there is no longer direct connection to the rest of the country through the NWPY track, Amtrak allows California Western to have access to the Union Pacific Mainline.

On August 29, 1997, California Western gave its note for $1,000,000.00 to Defendant Westamerica Bank's predecessor. As security, the Bank took all of California Western's equipment, fixed assets and contract rights. The equipment pledged to the Bank included "all locomotives, Rolling Stock, Track Machinery, Rail Track, and Structures" as listed on an exhibit attached to the Financing Statement. These included four locomotives, nine coach and observation cars, a Ford rail van, a ballast regulator, a tie inserter, three speeders, and a rail crane.

The Bank filed and recorded a UCC–1 Financing Statement in August, 1996. The "transmitting utility" box was not checked. On November 27, 2002 (just a few days before the bankruptcy filing) it filed another UCC–1, and filed yet another on December 12, 2002 (nine days *after* the bankruptcy filing). It never filed anything with the Surface Transportation Board.

Rolling Stock

Section 11301(a) of Title 49, United States Code, provides in that a security interest in railroad cars, locomotives, or other rolling stock and associated accessories used on a railroad and "intended for a use related to interstate commerce" shall be filed with the Surface Transportation Board in order to be perfected. The Trustee argues that since the Bank failed to comply with this statute, its security interest was unperfected at the time of filing and therefore avoidable. The Bank argues that the rolling stock was not used in interstate commerce so that 49 U.S.C. § 11301 is not applicable. It also argues that "rolling stock" means only the locomotives and rail cars.

Even if a railroad is wholly within a state, it may still be engaged in interstate commerce. *U.S. v. Union Stockyards & Transit Co. of Chicago,* 226 U.S. 286, 304, 33 S.Ct. 83, 57 L.Ed. 226 (1912). It is the nature of its commerce and not the parties to the commerce or their addresses which determines if interstate commerce is involved. *U.S. v. Erie R. Co.,* 280 U.S. 98, 50 S.Ct. 51, 74 L.Ed. 187 (1929). California Western has been the starting point for the shipment of lumber across the nation, and could be again if connecting track of another railroad is repaired; it has been heavily involved in interstate commerce.

There is no basis for the argument that a railroad ceases to be involved in interstate commerce because it is temporarily isolated from the rest of the national rail network or tourism has replaced freight as its primary source of income. Interstate commerce is still involved even of part of the journey is made by truck. In addition, tourism is itself an interstate commercial activity. *Gibbs v. Babbitt,* 214 F.3d 483, 494 (4th Cir.2000); *United States v. Taylor,* 966 F.2d 830, 835–36 (4th Cir.1992).

Moreover, § 11301 does not require that the rolling stock has to be *used* in interstate commerce but only that it be *intend-*

ed for a use *related* to interstate commerce. This expansive coverage makes it difficult to even imagine railroad rolling stock which is not covered by the statute.[1] The Trustee has met his burden of showing that California Western was intended for railroad use and therefore intended for a use related to interstate commerce. The Bank's security interest in the rolling stock is accordingly unperfected due to its failure to file with the Surface Transportation Board.

The Bank argues that there is a triable issue of fact as to which of its collateral is rolling stock. The term is generally defined as "locomotives, motorcars, passenger cars (or coaches), freight cars . . ., and all other wheeled vehicles, etc., running or capable of running on the tracks or rails." *Greene v. Long Island R. Co.,* 280 F.3d 224, 238 (2nd Cir.2002). The term includes work equipment. *In the Matter of the Valuation Proceedings Under Sections 303(c) and 306 of the Regional Rail Reorganization Act of 1973,* 445 F.Supp. 994, 1043 (1977).

California Western Railroad included four locomotives, nine coach and observation cars, a Ford rail van, a ballast regulator, a tie inserter, three speeders, and a rail crane as security to the Bank. The four locomotives, and nine coach and observation cars are inarguably rolling stock. As to the remaining equipment, the court is virtually certain the Ford rail van and the ballast regulator, tie inserter, and rail crane are all work equipment and therefore rolling stock. However, since the Trustee has not provided a declaration re-

garding these items, the court cannot grant summary judgment as to them or the three speeders unless, as discussed below, the Bank is entirely unsecured.

Other Collateral

■ The Trustee argues that the Bank's security interest in the non-rolling stock collateral was originally perfected in 1996 but lapsed. The Bank argues that the debtor was a "transmitting utility." Although § 9515(a) of the California Commercial Code provides that most financing statements lapse after five years if not renewed, § 9515(f) provides: "If a debtor is a transmitting utility and a filed financing statement so indicates, the financing statement is effective until a termination statement is filed." The Bank failed to check the box on the UCC–1 identifying the debtor as a transmitting utility. The Bank argues that since it was clear from the UCC–1 that the debtor was a railroad it met the "so indicates" requirement of § 9515(f).[2]

The Bank argues that more recent forms of UCC–1 do not contain the "transmitting utility" box, so failure to check it cannot be fatal. However, this argument begs the question of what "so indicates" means, as well as the effect an available but unchecked box might have on a researcher.

■ The purpose of a financing statement is to give fair warning to third parties. Only mistakes which are not seriously misleading allow a defective financing statement to survive judicial review. Cal. Com.Code § 9402(8). Where a financing statement does not identify the debtor as a

---

1. 49 U.S.C. § 11301 went into effect January 1, 1996, and replaced prior law which applied only to carriers subject to the jurisdiction of the ICC. The intent of Congress to create a more expansive statute is therefore clear and intentional. *See* Historical and Statutory notes to § 11301.

2. The issue is crucial because if the Bank's financing statement lapsed and the Bank became unsecured pursuant to Cal.Com.Code § 9515(c) and its two continuation attempts are avoidable pursuant to § 547(e)(2)(B) and (C) of the Bankruptcy Code.

transmitting utility, using those words, and fails to check a box available on the form for that purpose, it is easy to see that a third party could be misled into thinking that the financing statement had lapsed. The fact that a box was on the form the Bank used and the Bank did not check it is itself seriously misleading, as a researcher might reasonably conclude that where a form contains a box to check if the debtor is a transmitting utility, and the box is not checked, that the debtor is not a transmitting utility.

The court concludes that the Bank's failure to check the "transmitting utility" box was seriously misleading to third parties and did not meet the minimum requirements of § 9515(f) for effectiveness without renewal. Accordingly, the Bank's security interest is avoidable.

For the foregoing reasons, the Trustee's motion for summary judgment will be granted and the Bank's counter-motion denied. Final judgment will be entered after the rights of the other defendants have been determined. Counsel for the Trustee shall submit an appropriate form of order.